IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LYLE I. CARPENTER,<br><br>              Plaintiff,<br><br>     vs.<br><br>SOCIAL SECURITY ADMINISTRATION,<br>Jo Anne B. Barnhart, Commissioner<br><br>              Defendant. | 4:04CV3176<br><br>MEMORANDUM AND ORDER |

## INTRODUCTION

The Social Security Administration denied the claimant's application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. ("Act") and Title XVI of the Social Security Act, U.S.C. § 1381, et seq., initially and on reconsideration. After a hearing, an administrative law judge ("ALJ") determined on December 3, 2003, the claimant not to be disabled under the Act. The appeals council of the Social Security Administration refused the claimant's request for review on March 3, 2004. The claimant now seeks judicial review of the ALJ's determination since it represents the final decision of the defendant, the Commissioner of the Social Security Administration.

The claimant contends that the ALJ's decision is incorrect for several reasons: 1) the ALJ failed to accept as controlling the limitations and restrictions placed upon the claimant by his treating primary care physician, Dr. Neena Biswas, whose limitations nearly parallel the testimony of the claimant pursuant to Social Security Ruling (SSR) 96-2p; 2) even if the opinions of the treating doctor were not entitled to controlling weight, the ALJ failed to give the opinions of Dr. Biswas the substantial weight based on her examining relationship, her treatment relationship, the supportability of her opinions and their

consistency with the record as a whole; and 3) the ALJ did not properly apply *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), when determining the credibility of the claimant's subjective allegations of his physical and mental condition as to his limitations, restrictions and work activity. The court has reviewed the record, the ALJ's evaluation and findings, the parties' briefs, the transcript, and the applicable law. The court concludes the ALJ's finding that the claimant is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record.

## BACKGROUND

The claimant testified he was born on November 6, 1953 and was 51 years old at the time of the hearing. Tr. at 69. He has completed the twelfth grade and two years of college. Tr. at 565. His past relevant work activity includes production helper, cashier, pizza maker, furniture salesperson, sales attendant, cut-off sawyer, and telephone solicitor. Tr. at 18. The claimant alleged disability on March 20, 2001, due to fibromyalgia, left shoulder pain, right knee pain and headaches. Tr. at 69, 82-91.

On March 26, 2001, the claimant underwent a fibromyalgia exam at the Veterans Administration Medical Center (VAMC). Tr. at 182. The claimant stated that all symptoms started during his time in the service in 1971. Tr. at 184. He stated that physical work and cold weather increased his problems. Tr. at 184. He also experienced episodes of lower back, knee and shoulder pain. Tr. at 184. Based on the physical exam, the doctor noted the patient had "multiple trigger points, more pronounced on the right side." Tr. at 184. The doctor diagnosed the claimant with fibromyalgia. Tr. at 184.

A follow-up exam took place with Dr. Neena Biswas, claimant's treating physician, in April 2001. Tr. at 266. The claimant "states he has been having a lot of migraine headaches-ran out of migraine medication six months ago." Tr. at 266. On May 14, 2001,

claimant stated he had been "doing well" since his last visit but he believed his medications were not working correctly. Tr. at 254. He complained of stiff and sore muscles and worsening headaches. Tr. at 254. Dr. Biswas altered his medication. Tr. at 254. As of August 10, 2001, claimant stated that his migraines were much better and the medications were helping. On September 17, 2001 the claimant reported only one migraine headache since his last visit on August 10, 2001. Tr. at 241. Dr. Biswas believed the claimant's headaches to be "resolved, only one episode since August 10th." Tr. at 239. She opined the claimant's migraines are stable and controlled with the medication. Tr. at 241. Claimant began taking Prozac for depression. Tr. at 241.

On October 3, 2001, claimant visited Dr. Biswas for jaw pain and swelling. Tr. at 234. Claimant went to Saint Francis Medical Center to be admitted for his right jaw pain. Tr. at 234. The doctor opined the claimant's migraines, fibromyalgia and his degenerate joint disease were all stable. Tr. at 210. On November 14, 2001, claimant attended a follow-up appointment with Dr. Biswas. He complained of "having lots of lower back pain." Tr. at 224. He also denied any headaches, dizziness, or vision problems. Tr. at 224. The doctor opined the migraines were well-controlled and the claimant had no "staring episodes" of seizures. Tr. at 224. Dr. Biswas also increased Prozac for depression. Tr. at 226. At the Veterans Administration Medical Center on January 25, 2002, the doctor noted, "the veteran has one prostrating headache per month." Tr. at 401.

On February 5, 2002, Dr. Patricia Blake, Ph.D., a conferring physician for the Social Security Administration, performed a psychological evaluation on the claimant. Tr. at 212. Claimant reported he worked a variety of jobs, from general labor to retail and wholesale sales. Tr. at 212. His longest employment occurred at Office Max in Kearney, Nebraska. *Id.* He reported abusing drugs and alcohol for ten years. *Id.* Claimant reported six suicide

3

attempts beginning in 1975 or 1976 and the last one occurring in 1984. *Id.* He claimed his seizure disorder became first diagnosed in 1984. *Id.* Claimant reported being placed back on medication six to eight months ago, but has not taken it regularly. *Id.* His first diagnosis of fibromyalgia occurred in 2001. *Id.*

During the claimant's current mental functioning examination, the doctor reported the claimant appeared alert and oriented. *Id.* He is able to exchange information appropriately in a conversational setting. *Id.* His emotional reactions are appropriate, speech and content are normal and his judgment and insight appear normal. *Id.* The doctor reported there "do not appear to be restrictions in activities of daily living or in social functioning related to depression." *Id.* "He appears to have adequate concentration and attention needed for task completion." *Id.* He is also able to understand, remember and carry out short and simple instructions under ordinary supervision. *Id.* Claimant also reported that his wife handles the finances. *Id.* The doctor diagnosed the claimant with depressive disorder, fibromyalgia, seizure disorder, migraines and chronic pain. *Id.* "Current pain and fibromyalgia are likely to trigger reservation of depressive symptoms." *Id.*

On March 27, 2002 claimant visited Dr. Charles Sprague, a psychiatrist and conferring physician, at the Veterans Administration Medical Center. Tr. at 220. Claimant reported that he does not take the whole dose of his migraine medicine because it makes him "sleepy." Tr. at 220. The doctor reported, "he is very verbal, intelligent, and gives a long, complex, involved and sometimes fantastic history." Tr. at 220. He further reported that his speech is fluent, his mood varies with content, and his thoughts appear rational and goal directed. Tr. at 220. The doctor also reported, "I got the impression that this

4

veteran may be entitlement seeking." Tr. at 220.  At a follow-up on March 28, 2002, at the neurology clinic, Dr. Balachandran Wariyar, a conferring physician, reported claimant has been essentially stable on current medication.  Tr. at 381.  On April 24, 2002, Dr. Biswas saw claimant after he fell over a vacuum.  Tr. at 381.  Claimant denied any headaches or dizziness.  Tr. at 381.  Then on May 17, 2002, the Department of Veteran Affairs issued a disability rating on the claimant.  Tr. at 396.  They reported the claimant to be 60% disabled as of January 25, 2002.  Tr. at 396.

On June 27, 2002, Dr. Biswas completed a physical capability evaluation for the claimant.  Tr. at 305.  Dr. Biswas stated the claimant meets the american rheumatology criteria for fibromyalgia.  Tr. at 305.  Dr. Biswas estimated patient's experience of symptoms were "often" severe enough to interfere with attention and concentration.  Tr. at 307.  Dr. Biswas also reported claimant appeared "moderately" limited in his ability to deal with work stress.  Tr. at 307.

On July 11, 2002, claimant complained of left shoulder dislocation.  Tr. at 369.  "It was apparent the patient was trying to express that he was having physical discomfort, however facial grimacing was not apparent."  Tr. at 369.  On August 1, 2002, the claimant claimed he fell when his knee gave out while moving a desk.  Tr. at 363.  He denied any headaches, dizziness, or blurred vision.  He stated that he had passed out from a seizure in which he did not take his medication.  Tr. at 363.  The doctor reported the claimant's seizures are "well controlled."  Tr. at 363.

As of August 7, 2002, the Department of Veteran Affairs issued a second disability rating.  Tr. at 386.  The claimant became eligible for compensation as a result of a 60% disability from January 25, 2002; and a combined evaluation for pension purposes of 80%. Tr. at 386-391.  On September 12, 2002, claimant visited Dr. Sprague and claimed "I'm

5

more depressed." Tr. at 356. He stated to Dr. Sprague that he has a computer and enjoys the Internet, and he plays an on-line role playing game every night. Tr. at 356. Dr. Sprague stated that the claimant's "thought is rational and goal-directed. No psychotic symptoms, no death wishes." Tr. at 356.

Upon a follow-up exam on March 20, 2003 with Dr. Wariyar, claimant reported missing doses of medication and starting to "stare off" again. Tr. at 342. Dr. Wariyar diagnosed claimant with partial seizures, but the doctor noted these seizures are stable when on medication. Tr. at 342. On May 7, 2003 the doctor reported the claimant had "well controlled migraines and seizures." Tr. at 336. Again on June 24, 2003 claimant saw Dr. Sprague for a follow-up exam. He reported that he and his wife moved to a single-level home to eliminate some falls. Tr. at 325. Dr. Sprague reported "speech is normal, mood appears euthymic or flat. Thought is rational but there is somatic preoccupation. He has no hallucinations or death wishes." Tr. at 325.

The administrative hearing began on August 28, 2003. Tr. at 561-98. After claimant's last injury, he reported he left his job at Office Max. Tr. at 571. Claimant said he has not had another job since Axtel because "I just couldn't get around." Tr. at 574. Accordingly, claimant began receiving money from the veterans association. Tr. at 574. He reported that he could not drive that much anymore and attributes it mostly to fibromyalgia because he is very unsteady on his feet. Tr. at 574 and 580. Claimant reported that he does not sit at any one particular time for more than 15 or 20 minutes without having to get up and walk around. Tr. at 582. He stated that he does chores for about two and a half hours per day, which include laundry, making dinner and washing dishes. Tr. at 582. He also stated that he "gets confused very easily" with his ability to

6

handle detailed instructions. Tr. at 588. "I sometimes overreact and when I am overreacting, I multiply my anxiety and my inability to concentrate." Tr. at 589. Claimant stated that now that he is on his medication, he only gets his headaches about once every month or two. Tr. at 595.

The ALJ posed questions to the vocational expert (VE). Tr. at 607. The ALJ determined that the claimant had the residual functional capacity (RFC) to lift and carry 20 pounds occasionally and 10 pounds frequently, and stand/walk and sit for six hours in an eight hour day, with normal breaks. Tr. at 31. He could occasionally perform all postural activities such as climbing, kneeling, crouching and crawling, but he should not work on ladders or scaffolds or with dangerous equipment or machinery. Tr. at 32. The ALJ found that claimant should avoid concentrated exposure to cold or vibration. Tr. at 32. The VE testified that a person of claimant's age, education, work experience, and RFC, could perform 90 to 95 percent of the full range of light unskilled work. His past relevant work as a cashier, sales person, sales attendant and telemarketer work would fall within his RFC. Tr. at 601-603. The VE stated the claimant could also perform sedentary and unskilled work. Tr. at 602.

## ALJ's DECISION

A disability is defined as the "inability to engage in any substantially gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (D)(1)(A); 20 C.F.R. § 404.1505. A claimant is considered to be disabled when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

7

in any other kind of substantially gainful work which exists in [significant numbers in] the national economy...." 42 U.S.C. § 432 (D)(2)(A).

The ALJ evaluates a disability claim according to a five step sequential analysis prescribed by Social Security regulations. The ALJ examines

> any current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and age, education and work experience. *See* 20 C.F.R. § 404.1520(a); *Braswell v. Heckler*, 733 F.2d 531, 533 (8th Cir. 1984). If a claimant suffers from an impairment that is included in the listing of presumptively disabling impairments (the Listings), or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled without considering age, education, or work experience. *See Braswell*, 733 F.2d at 533. If the Commissioner finds that the claimant does not meet the Listings but is nevertheless unable to perform his or her past work, the burden of proof shifts to the Commissioner to prove, first, that the claimant retains the residual functional capacity to perform other kinds of work, and second, that other such work exists in substantial numbers in the national economy. *See Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). A claimant's residual functional capacity is a medical question. *See id.* at 858.

*Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000).

Using this analysis, the ALJ concluded that the claimant is not disabled within the meaning of the Social Security Act. Tr. at 32. The ALJ found that the claimant had not engaged in substantially gainful activity since his alleged onset date, March 20, 2001. Tr. at 18. The ALJ further found that the combination of the following impairments is severe under the Act and regulations: fibromyalgia, headaches, depression and history of alcoholism (ending in 1989). Tr. at 26. The ALJ determined that the claimant has not contended that his medically determinable impairments meet the "listings," and the record contains no evidence which would support such a finding. Tr. at 26.

Finally, the ALJ determined that the claimant's allegations of a complete inability to work is not credible. Tr. at 30. The ALJ noted that the claimant's alleged onset date of disability was when he quit working his last job in March of 2001. At the same time, the

8

Veterans Administration Medical Center did several extensive examinations which all produced mild results. Tr. at 30. The record also shows that Dr. Mazour and Dr. Hawley, both conferring physicians for the Social Security Administration, opined on February 12, 2001, and February 16, 2001, that the claimant could do light work. Tr. at 30. At the hearing, the claimant further alleged many symptoms that are never mentioned in the Veterans Administration Medical Center's notes. Tr. at 30. The ALJ also noted that the record does not contain any doctors' restrictions. Tr. at 30. Dr. Biswas referred the claimant to an orthopedist who noted that the MRI of the claimant's back and hips appeared "fairly normal" with "some bulging of the disks." Dr. Biswas performed a physical capacity evaluation on the claimant and opined the claimant "often" experiences symptoms severe enough to interfere with his attention and concentration. Dr. Biswas checked "often" to describe the concentration of the claimant, but the vocational expert testified at the hearing that, if the claimant's concentration is between seldom and frequent, the claimant could probably work. Tr. at 30-31. Given the choices available to Dr. Biswas, the selection of "often" to describe how frequent claimant's symptoms interfere with his concentration, should be viewed as more of a "moderate" ranking. Claimant still drives up to one hour a day, he recently moved to a new house and painted his house, he plays on the computer for up to six hours at a time, and he does housework for two and a half hours per day. Tr. at 31. The ALJ determined the claimant possesses the residual functional capacity to perform his past relevant work and he cannot be disabled pursuant to 20 C.F.R. 404.1520(f) and 20 C.F.R. 416.920(f).

LEGAL STANDARD

When reviewing the decision not to award disability benefits, the district court does not act as a fact finder or substitute its judgment for the judgment of the ALJ or the Commissioner. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). Rather, the district court will affirm the Commissioner's decision to deny benefits if it is supported by substantial evidence in the record as a whole. *Eback v. Chater*, 94 F.3d 410, 411 (8th Cir. 1996). "Substantial evidence is that which a reasonable mind would find as adequate to support the ALJ's decision." *Brown v. Chater*, 87 F.3d 963, 964 (8th Cir. 1996) (*citing Baumgarten v. Chater*, 75 F.3d 366, 368 (8th Cir. 1996)). In determining whether the evidence in the record is substantial, the court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). If the record contains substantial evidence supporting the Commissioner's decision, the court may not reverse the decision either "because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citations omitted). The court may, however, "reverse the administrative determination on the ground of unreasonableness." *Bradley v. Bowen*, 660 F. Supp. 276, 279 (W.D. Ark. 1987) (*citing Gavin v. Heckler*, 811 F.2d 1195, 1199-1201 (8th Cir. 1987), *and Deuter v. Schweiker*, 568 F. Supp. 1414 (N.D. Ill. 1983)).

DISCUSSION

**A. Weight Afforded to Treating Physician's Diagnosis**

The ALJ found that "the claimant is not entitled to a period of disability or to the payment of disability insurance benefits under Title II of the Social Security Act." Tr. at 33.

Based on the similarity of the first two issues in this case, the court will be addressing them together. The claimant contends the finding is in error because the ALJ failed to accept as controlling the limitations and restrictions placed upon the plaintiff by his treating primary care physician, Dr. Neena Biswas, whose limitations nearly parallel the testimony of the plaintiff pursuant to Social Security Ruling (SSR) 96-2p. Secondly, the claimant contends that even if the opinions of the treating source were not entitled to controlling weight, the ALJ failed to give the opinions of Dr. Biswas the substantial weight based on her examining relationship, her treatment relationship, the supportability of her opinions and their consistency with the record as a whole.

"The opinion of a treating specialist controls if it is well-supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence." *Kelley v. Callahan*, 133 F. 3d 583, 589 (8th Cir. 1998). "In reviewing applications for social security benefits, ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained in the record." *Prosch v. Apfel*, 201 F.3d 1010, 1010 (8th Cir. 2000). "A treating physician's opinion is generally entitled to substantial weight; however, such an opinion is not conclusive in determining disability status, and the opinion must be supported by medically acceptable clinical and diagnostic data." *Davis v. Shalala,* 31 F.3d 753, 756 (8th Cir. 1994). In reviewing an application for Social Security disability benefits, the ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Prosch v. Apfel*, 201 F.3d 1010, 1010 (8th Cir. 2000). However, it is also important to note that "the opinion of a consultative physician who examines the claimant once or not at all does not generally constitute the

substantial evidence." *Jenkin v. Apfel*, 196 F.3d 922 (8th Cir. 1999), quoting *Kelly v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998). This is especially true when the consultative physician is the only examining doctor to contradict the treating physician. *See Jenkin v. Apfel*, 196 F.3d 922 (8th Cir. 1999). Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must "always give good reasons in our notice of determination or decision for the weight we give to your treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

"Treating source medical opinions are still entitled to deference and must be weighed using all of the factors in C.F.R. § 404.1527. *Prosch v. Apfel*, 201 F.3d 1010, 1016 (8th Cir. 2000). The five factors that must be considered when determining if a treating physician's opinion should be granted controlling weight are: 1) the length of the treatment relationship; 2) nature and extent of treatment relationship; 3) quality of evidence in support of opinion; 4) consistency of the opinion with the record as a whole; and 5) whether treating physician is also a specialist. 20 C.F.R. § 404.1527(d). "Treating physicians' opinions are not medical opinions that should be credited when they simply state that a social security disability claimant cannot be gainfully employed, because they are merely opinions on the application of the statute, a task assigned solely to the discretion of the commissioner of Social Security." *Stormo v. Barnhart,* 377 F.3d 801, 801 (8th Cir. 2004). Also, it is important to note that "when an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Wardford v. Bowen*, 875 F.2d 671 (8th Cir. 1989). "Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits." *Roth v. Shalala*, 45 F.3d 279 (8th Cir. 1995).

The claimant contends that the ALJ dismissed the various opinions of Dr. Biswas with little discussion or comparison to other medical opinions. Claimant believes the ALJ did not address the statement given by Dr. Biswas that stated the claimant would "often" experience symptoms severe enough to interfere with attention and concentration. Tr. at 307. Claimant argues the ALJ simply failed to give any consideration to the evidence and declined to provide a basis for not according any weight to the treating physician's opinion.

It is the responsibility of the ALJ to determine the claimant's residual functional capacity based on all of the relevant evidence. 20 C.F.R. §§ 404.1545 and 416.945. In this case, the ALJ properly considered all relevant medical evidence of the record. Dr Biswas performed a physical capacity evaluation on the claimant and opined the claimant "often" experiences symptoms severe enough to interfere with his attention and concentration. The ALJ properly opined that Dr. Biswas checked "often" for concentration, but failed to provide a definition and set forth functional limitations. Tr. at 30. In addition, the vocational expert testified at the hearing, that if the claimant's concentration is between "seldom" and "frequent," the claimant could probably work and it would be similar to a "moderate" finding. Tr. at 30. He stated that given Dr. Biswas' selection of "often" from her choices of "never," "seldom," "often," "frequently," and "constantly," the doctor most likely meant the claimant's concentration would be affected periodically.

In addition, Dr. Blake, Ph.D., performed a psychological report on the claimant on February 5, 2002. Tr. at 211. He stated that "Mr. Carpenter appears to have adequate concentration and attention needed for task completion." Tr. at 213. He also stated that it appears the claimant is able to understand, remember, and carry out short and simple instructions under ordinary supervision. Tr. at 213. The claimant's residual functional

13

capacity also supported this finding. The ALJ determined that the claimant had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, and stand/walk and sit for six hours in an eight hour day, with normal breaks. Tr. at 31. He could occasionally perform all postural activities such as climbing, kneeling, crouching and crawling, but he should not work on ladders or scaffolds or with dangerous equipment or machinery. Tr. at 32. The claimant further reported that he plays on the computer for up to six hours per day, he does approximately two and a half hours of housework per day, and he recently moved into a new house in which he painted. Tr. at 356. Also, Dr. Biswas' treatment notes show that claimant's migraines were controlled when taking medication. Tr. at 226, 241. Dr. Wariyar diagnosed claimant with partial seizures, but noted these seizures were stable when on medication. Tr. at 342. On May 7, 2002, Dr. Biswas reported the claimant had "well controlled migraines and seizures." Tr. at 336.

It appears that Dr. Biswas' physical capacity evaluation of the claimant proved consistent with the ALJ's decision that the claimant is not disabled within the meaning of the Act. Therefore, Dr. Biswas' opinion that the claimant "often" experiences symptoms severe enough to interfere with attention and concentration is consistent with the ALJ's decision. The court finds that the ALJ's decision, in this regard, is supported by substantial evidence.

**B. Pain**

The claimant contends the finding is in error because the ALJ failed to follow the *Polaski* standard in evaluating the claimant's subjective complaints of pain. The standard, in the Eighth Circuit, for evaluating a claimant's subjective complaints of pain in Social

Security cases is *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). According to the Eighth Circuit, an ALJ may not disregard a plaintiff's subjective complaints solely because the objective medical evidence does not fully support them:

> Absence of objective medical basis supporting the degree of severity of disability claimant's subjective complaints alleged is just one factor to be considered in evaluating credibility of testimony and complaints; [ALJ] must give full consideration to all of the evidence presented relating to subjective complaints, including the [plaintiff's] prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the [plaintiff's] daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The [ALJ] is not free to accept or reject the [plaintiff's] subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the record as a whole.

*Polaksi v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (emphasis in original). "Pain is recognized as disabling when it is not remedial and precludes claimant from engaging in form of substantial gainful activity; mere fact that working may cause pain or discomfort does not mandate finding of disability." *Cruse v. Bowen*, 867 F.2d 1183, 1183 (8th Cir. 1989).

"Not all pain reaches a level [at] which is disabling. The claimant's level of care is not consistent with an individual who alleges the severity of her complaints." *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987). "While the ALJ may not discount a social security disability claimant's complaints solely because they are not fully supported by objective medical evidence, a claimant's complaints may be discounted based on the inconsistencies in the record as a whole." *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir.

15

2005). "Allegations of disabling pain made by claimant seeking social security disability benefits may be discredited by evidence that claimant has received minimum medical treatment and/or has taken only occasional pain medication." *Kelley v. Callahan,* 133 F.3d 583, 589 (8th Cir. 1998).

The claimant's subjective complaints of pain are inconsistent with objective tests, the nature of his disorder, and eyewitness testimony, as previously set forth herein. The ALJ properly considered inconsistencies between the claimant's subjective complaints and the objective medical evidence, combined with the claimant's daily activities, medical treatment and medication and determined that the extent of the claimant's complaints to not be credible. After reviewing the evidence, the court agrees.

## CONCLUSION

Accordingly, the court concludes that the ALJ's findings that the claimant is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record as a whole. The defendant's decision is affirmed.

IT IS, THEREFORE, ORDERED that the final decision of the defendant, the Commissioner of the Social Security Administration, is affirmed.

DATED this 25th day of August, 2005.

BY THE COURT:

s/Joseph F. Bataillon
JOSEPH F. BATAILLON
UNITED STATES DISTRICT JUDGE